NOTICE
Decision filed 05/04/17. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2017 IL App (5th) 140300

NO. 5-14-0300

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 13-CF-24 |
| | ) | |
| MICHAEL FICKES, | ) | Honorable |
| | ) | Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE MOORE delivered the judgment of the court, with opinion.
Justice Goldenhersh concurred in the judgment and opinion.
Justice Welch concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1    The defendant, Michael Fickes, appeals his conviction, following a trial by jury in the circuit court of Fayette County, for the offense of aggravated participation in methamphetamine manufacturing. For the following reasons, we affirm in part, reduce the defendant's aggravated participation in methamphetamine manufacturing conviction to simple participation in methamphetamine manufacturing, and remand for a new sentencing hearing on that conviction.

1

¶ 2                                                FACTS

¶ 3     The facts necessary to our disposition of this appeal follow. On February 24, 2014, the defendant proceeded to trial before a jury on the seven counts with which he was charged, which were as follows: (1) count I, participation in methamphetamine manufacturing (400 grams or more but less than 900 grams); (2) count II, unlawful possession of methamphetamine manufacturing materials; (3) count III, unlawful disposal of methamphetamine manufacturing waste; (4) count IV, aggravated participation in methamphetamine manufacturing (400 grams or more but less than 900 grams); (5) count V, aggravated participation in methamphetamine manufacturing (100 grams or more but less than 400 grams); (6) count VI, participation in methamphetamine manufacturing (100 grams or more but less than 400 grams); and (7) count VII, possession of a methamphetamine precursor. The aggravated participation charges stemmed from the allegation that the manufacturing in question took place "within 1,000 feet of a place of worship, St. James Lutheran Church."

¶ 4     At a pretrial conference in late January, the judge who was to conduct the trial, the Honorable S. Gene Schwarm, asked the parties "if there was anything that could be stipulated to, to avoid calling [certain witnesses] or decrease the testimony." Judge Schwarm noted that he asked because he was "thinking about an attempt to shorten up the trial" in light of snowy weather conditions that had occurred or were forecast. Although the parties discussed the possibility of certain stipulations with regard to witnesses, neither party raised the question of stipulating with regard to St. James Lutheran Church. Ultimately, the trial date was not changed.

¶ 5    At trial on February 24, 2014, Judge Schwarm admonished the potential jurors not to do any "independent research" on the case, explaining that the jurors would "hear from that witness stand what you need to make decisions in this case" and that he and the parties wanted the jury "to base your decisions on what you hear in this courtroom and not be influenced by anything outside the courtroom." Following *voir dire*, when the jury was sworn, he reminded the sitting jurors not to conduct independent research. During her opening statement, counsel for the State told the jury that she expected testimony from police officer Jerry Bowling that the alleged offenses occurred "approximately a hundred feet from a church."

¶ 6    The first witness to testify for the State was Jerry Bowling, a police officer with the city of Vandalia. He testified that on January 30, 2013, he was on duty and was attempting to serve an outstanding warrant on an individual not connected with this case at a nearby apartment building when he smelled a strong chemical odor that he suspected might be tied to methamphetamine manufacturing. Bowling was subsequently asked to "describe exactly" where this took place. He testified, "The address is 117 South Seventh Street. The St. James Lutheran Church out here on Gallatin, just south of that, behind that church 111 feet." When asked how he knew the distance, Bowling testified that he "measured it personally with a measuring wheel" used for traffic accidents, although he did not testify as to when he measured the distance. He testified that it was 111 feet from "the front door of the residence to the back door of the church." Bowling testified in detail about how the defendant became a suspect, what was discovered during a subsequent search of the premises, and other facts not relevant to the issue raised by the

3

defendant in this appeal. On cross-examination, when asked to explain the layout of the premises, Bowling testified that the house where the methamphetamine manufacturing materials were found was "pretty much right behind the St. James Lutheran Church." He was then asked, "That is the one, pretty much, right behind the courthouse?" He testified, "Yes," then was asked, "So the church is there on this block, correct?" He again testified, "Yes." He was later asked, still on cross-examination, about methamphetamine manufacturing materials found outside of the house, in "a big open yard." He attempted to describe the yard in relation to other structures. He testified that "there is a house—or, it's the church and then the road." To clarify, he testified that the closest building to where the materials were found was "the church."

¶ 7    The next witness to testify for the State was Deputy Sheriff Larry Halleman. Before Halleman began his testimony, Judge Schwarm noted the proximity to the courthouse of the area where the alleged offense occurred and reminded the jurors, "you can't do any independent research. We want you to listen to the evidence and base your decision on the evidence. So don't drive over there until this trial is done, if you want to go look at the premises." Thereafter, Halleman testified that on January 30, 2013, he "was dispatched to assist the Vandalia Police Department with what they believed to be a meth manufacturing lab in Vandalia." When asked where he responded to, Halleman testified, "It was behind the church directly across from this building on Seventh Street." Like Bowling, Halleman testified in detail about how the defendant became a suspect, what was discovered during a subsequent search of the premises, and other facts not

4

relevant to the issue raised by the defendant in this appeal. Following Halleman's testimony, the trial was recessed for the day.

¶ 8       On February 25, 2014, testimony resumed. Cheri Wright testified for the State that on January 30, 2013, she lived in Vandalia at the house where police discovered the methamphetamine manufacturing materials. She testified in detail about the events of that night but did not testify as to the location of the house in relation to any other building. She testified that ultimately she was arrested and pleaded guilty to unlawful possession of methamphetamine manufacturing materials. Two forensic scientists and a special agent for the State Police also testified for the State. However, none of them testified about the location of the house in relation to any other building. Following their testimony, the State rested. The defendant moved for the admission of certain documents, and documents were admitted that showed that witness Wright had pleaded guilty to unlawful possession of methamphetamine manufacturing materials, as she had testified. The defendant also moved for a directed verdict, contending, with regard to counts I, II, and III, that the State had failed to present sufficient evidence to prove that any of the methamphetamine manufacturing materials that were found at Wright's residence were connected to the defendant. Judge Schwarm denied the motion for counts I, II, and III. When asked if he had argument with regard to the remaining counts, counsel for the defendant stated that counts IV through VI were "pretty much, the same argument as Count I and Count II. So I would stand by that argument, but I think it goes along with do you believe—there was testimony the property was within a thousand feet of a place of worship, and that's really the only difference between Count I and Count II." Judge

5

Schwarm responded, "I recall that too that I think it was Officer Bowling testified he actually measured with a measuring device and St. James Lutheran Church was 110 feet, or thereabouts." Judge Schwarm subsequently denied the motion for a directed verdict with regard to counts IV through VII as well.

¶ 9    The defendant testified on his own behalf. He denied ownership or possession of all of the methamphetamine manufacturing materials in question, with the exception of a bottle of drain cleaner, which he testified Wright gave him to use to unclog her toilet, and which he testified he did use to unclog her toilet. He denied participating in the manufacturing of methamphetamine. Counsel for the defendant specifically asked the defendant if the defendant had participated "in the manufacture of methamphetamine somewhere between more than 400 grams but less than 900 grams of a substance containing meth within a thousand feet of worship [*sic*] from the St. James Lutheran Church here in Vandalia?" The defendant responded, "No." Counsel for the defendant then asked the defendant if the defendant had participated "in methamphetamine manufacturing which was more than 100 grams but less than 400 grams of a substance containing meth within a thousand feet of St. James Lutheran Church in Vandalia?" The defendant responded, "No." Following the defendant's testimony, the defense rested.

¶ 10    The following morning, February 26, 2014, the parties concluded their jury instruction conference. The State moved to dismiss count V (aggravated participation in methamphetamine manufacturing, 100 grams or more but less than 400 grams) and count VI (participation in methamphetamine manufacturing, 100 grams or more but less than 400 grams). The defendant did not oppose the motion, and it was granted. During closing

6

argument, the State told the jury that "Officer Bowling told you that this property from the front door of Cheri Wright's house to the church is 111 feet," and that part of what the jury had to determine was whether the manufacture of methamphetamine "was within 111 feet or within a thousand feet of the church." Subsequently, the jury was instructed that to convict the defendant of aggravated participation in methamphetamine manufacturing, the jury must find, *inter alia*, that "the manufacture of methamphetamine was within 1,000 feet of a place of worship." After deliberating for approximately 3.5 hours, the jury reached its verdicts on the five counts that remained. The defendant was found guilty of (1) aggravated participation in methamphetamine manufacturing, (2) participation in methamphetamine manufacturing, (3) unlawful possession of methamphetamine manufacturing materials, and (4) unlawful disposal of methamphetamine manufacturing waste. He was found not guilty of possession of a methamphetamine precursor.

¶ 11    A sentencing hearing was held on March 18, 2014. At the hearing, Judge Schwarm first entertained the defendant's motion for a judgment of acquittal notwithstanding the verdict, wherein the defendant again challenged the sufficiency of the evidence against him on the four counts of which he was convicted, contending again that no evidence showed the defendant had "any control, possession, [of] the items." With regard to the aggravated participation in methamphetamine manufacturing count, counsel for the defendant stated that "We would concede that Cheri's residence was within 1,000 feet of a place of worship." Subsequently, Judge Schwarm denied the defendant's motion in its entirety, and proceeded to sentencing.

¶ 12    The State recommended a 40-year sentence on the aggravated participation in methamphetamine manufacturing conviction, to be served at 75%. The State contended that the participation in methamphetamine manufacturing and unlawful possession of methamphetamine manufacturing materials convictions would merge with the aggravated participation conviction. The State recommended a 14-year concurrent sentence on the unlawful disposal of methamphetamine manufacturing waste conviction. Thereafter, Judge Schwarm found that the participation in methamphetamine manufacturing and unlawful possession of methamphetamine manufacturing materials convictions did in fact merge with the aggravated participation conviction. Accordingly, he sentenced the defendant only on the aggravated participation in methamphetamine manufacturing conviction and the unlawful disposal of methamphetamine manufacturing waste conviction. He sentenced the defendant to 35 years in the Illinois Department of Corrections, followed by a 3-year term of mandatory supervised release (MSR), on the aggravated participation conviction, and to a concurrent term of 10 years, followed by 2 years of MSR, on the unlawful disposal conviction. Both sentences were to be served at 75%.

¶ 13    On June 16, 2014, a hearing was held before the Honorable Michael D. McHaney, wherein the defendant asked that his sentence be reduced. The State responded that the defendant's 35-year sentence on his Class X felony conviction "was approximately in the middle" of the 15- to 60-year sentencing range for the conviction, and that the 10-year concurrent sentence "was not the top end" of the 3- to 14-year sentencing range for that conviction. The defendant's motion was denied, and this timely appeal followed.

8

¶ 14                        ANALYSIS

¶ 15    On appeal, the defendant does not challenge his conviction and sentence for unlawful disposal of methamphetamine manufacturing waste. Accordingly, that conviction and sentence are affirmed. With regard to his conviction for aggravated participation in methamphetamine manufacturing, he challenges the sufficiency of the evidence, contending that because the State presented no evidence that a building, purported to be a church, operated as a place of worship on the date in question, his conviction must be reduced to simple participation in methamphetamine manufacturing, and this case must be remanded for a new sentencing hearing on that conviction. The State responds that (1) the defendant has forfeited his challenge because it is not really a sufficiency of the evidence argument but is instead a challenge for lack of proper foundation, and (2) forfeiture notwithstanding, there was adequate evidence adduced at trial from which the jury could have inferred that St. James Lutheran Church operated as a place of worship on the date in question.

¶ 16    We find the State's first argument unconvincing. The gist of the State's first argument is that although sufficiency of the evidence challenges are not subject to the doctrines of forfeiture or waiver, in this case, the defendant's challenge is in fact "an argument as to lack of proper foundation for the testimony of the police officers on whether the building was actually a place of worship," and therefore is subject to the doctrines of forfeiture and waiver. As a factual matter, this is simply incorrect. No officer testified at trial "on whether the building was actually a place of worship," and the

9

defendant does not contend on appeal that if the officers had so testified, they would have lacked a sufficient foundation for so doing.

¶ 17　We turn, therefore, to the question of the sufficiency of the evidence. "When a defendant challenges the sufficiency of the evidence in a criminal case, it is not the function of a reviewing court to retry the defendant." *People v. Boykin*, 2013 IL App (1st) 112696, ¶ 6. Instead, we ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We do not substitute our judgment for that of the trier of fact on issues of the weight of the evidence presented or the credibility of the witnesses who testified. *Id*. However, it is fundamental to our system of justice that the State bears the burden of proving, beyond a reasonable doubt, all essential elements of the charged offense, and where the evidence that has been adduced at trial is so unsatisfactory as to justify a reasonable doubt of the defendant's guilt, we must reverse a defendant's conviction. *Id*. If, from the evidence presented to the trier of fact at trial, we can reasonably draw an inference in the State's favor, we will draw that inference. *People v. Sims*, 2014 IL App (4th) 130568, ¶ 131. Nevertheless, caution is warranted, as "[t]he line between a reasonable inference and speculation can be difficult to locate." *Id*. ¶ 138.

¶ 18　In this case, the parties agree that the statutory section at issue is section 15(b)(1)(H) of the Methamphetamine Control and Community Protection Act (Act) (720 ILCS 646/15(b)(1)(H) (West 2012)), which, at the time of the alleged offense, stated that a person engages in aggravated participation in methamphetamine manufacturing if the

10

person knowingly participates in the manufacture of methamphetamine with the intent that methamphetamine or a substance containing methamphetamine be produced, and "the methamphetamine manufacturing occurs within 1,000 feet of a place of worship or parsonage."[1] We note that no published opinions interpret section 15(b)(1)(H) of the Act. However, as the State notes, section 2-15b of the Criminal Code of 2012 defines "place of worship" as "a church, synagogue, mosque, temple, or other building, structure, or place used primarily for religious worship and includes the grounds of a place of worship." 720 ILCS 5/2-15b (West 2012). Therefore, we agree with the parties that cases interpreting enhancement provisions of statutes other than the Act, that also refer to locations fitting the "place of worship" definition, are among the appropriate guides for us as we consider the defendant's sufficiency of the evidence challenge.

¶ 19    In support of his argument on appeal, the defendant points to *People v. Ortiz*, 2012 IL App (2d) 101261, ¶¶ 6, 10-13, wherein our colleagues in the Second District held that, for purposes of a bench trial conviction pursuant to section 407(b) of the Illinois Controlled Substances Act (which makes it illegal to deliver less than one gram of a controlled substance within 1,000 feet of a "church, synagogue, or other building, structure, or place used primarily for religious worship" (720 ILCS 570/407(b)(1) (West 2008))), the State's failure to prove beyond a reasonable doubt that the building in question functioned primarily as a place of worship on the date of the offense rendered

---

[1]Because the defendant's simple participation in methamphetamine manufacturing conviction involved 400 or more grams but less than 900 grams, on remand he will be subject to a sentence of between 12 to 50 years, rather than the sentence of 15 to 60 years he faced under the enhancement the State failed to adduce testimony to prove. See 720 ILCS 646/15(a)(2)(d), (b)(2)(d) (West 2012).

11

the evidence insufficient to sustain the defendant's conviction, despite the trial court's conclusion that it could reasonably infer from photographs and testimony admitted at trial that the building was in fact a church. The *Ortiz* court noted that the photographs and testimony were insufficient because they did not support the temporal requirement that the church must have existed on the date of the offense; instead, the evidence adduced by the State left "no way of knowing whether the Emmanuel Baptist Church existed on January 7, 2009." 2012 IL App (2d) 101261, ¶ 11. Subsequent to *Ortiz*, our colleagues in the Second District reiterated, in *People v. Cadena*, 2013 IL App (2d) 120285, ¶¶ 13, 16, that to sustain a conviction pursuant to section 407(b), the State must prove beyond a reasonable doubt that the building in question was functioning primarily as a place of worship on the date of the offense or offenses, holding that testimony that a church was "an active church," without specifying that it was active on the date of the offense or offenses, rather than at the time of trial, was insufficient. The *Cadena* court added that the State must also prove beyond a reasonable doubt how it is known that the building in question was functioning primarily as a place of worship on the date of the offense or offenses, noting that "the bare facts that [a] witness is a police officer with a certain number of years of service" is not sufficient—instead, there must be "the demonstration and explanation of how the witness is familiar with the enhancing location." *Id.* ¶ 17. Thereafter, in *People v. Rodriguez*, 2014 IL App (2d) 130148, ¶¶ 60-68, our colleagues in the Second District applied the same analysis to a conviction pursuant to an enhancement to the aggravated discharge of a firearm statute *vis-à-vis* the occurrence of the offense within 1000 feet of a school (see 720 ILCS 5/24-1.2(b) (West 2010)). The *Rodriguez*

court concluded that the State had proven the temporal requirement beyond a reasonable doubt where the State presented sufficient testimony from which "the jury reasonably could infer that the building comprising Brady Elementary was operating as a school on the date of the offense." 2014 IL App (2d) 130148, ¶ 66.

¶ 20 The State, on the other hand, points to *People v. Foster*, 354 Ill. App. 3d 564, 566-68 (2004), wherein—years prior to the *Ortiz*, *Cadena*, and *Rodriguez* decisions—our colleagues in the First District held that, for purposes of a bench trial conviction pursuant to section 407(b), the stipulation of the parties that, if called, a witness "would testify he measured the distance from 4310 West Crystal Street to the New Hope Church located at 4255 Division Street" and that the distance "measured 580 feet" was sufficient to sustain the defendant's conviction because "a rational trier of fact could have inferred New Hope Church was a church used primarily for religious worship based on its name." The State urges us to rely on *Foster* and a Fourth District case interpreting it—*People v. Sims*, 2014 IL App (4th) 130568—to conclude that in the present case, "the evidence presented by the State at trial established Officer Bowling's personal knowledge of the area as of January 30, 2013," and that a reasonable jury could have inferred from Bowling's testimony that "St. James Lutheran Church operated as a place of worship and was within 1,000 feet of the residence in question as of January 30, 2013."

¶ 21 In reply, the defendant contends that *Foster* is logical, and therefore persuasive, only when limited to its own factual posture: a stipulation wherein the location in question was specifically referred to as "New Hope Church"—a phrase that included the word "church." As the defendant points out, when a stipulation is involved, a party is

13

generally "precluded from attacking or contradicting any facts to which" the party has previously stipulated. *People v. Hill*, 345 Ill. App. 3d 620, 631 (2003). Therefore, it would have been patently unfair in *Foster* to allow the defendant, on appeal, to attack the sufficiency of his own stipulation at trial that the building was a church. Under the circumstances of such a stipulation, we agree with the defendant—and the *Foster* court— that a reasonable trier of fact could have inferred from the stipulation that the building was a church used primarily for religious worship, based on its name.

¶ 22    Unlike in *Foster*, in this case there was no stipulation. The relevant testimony adduced at trial in this case is set out in detail above. In its brief on appeal the State tries to string together this testimony in a manner that would support a reasonable inference that St. James Lutheran Church was functioning primarily as a place of worship on January 30, 2013. The State posits that Bowling's testimony that he had been a Vandalia police officer for almost seven years and that the church was on the same block as the county courthouse, as well as his use of street names relative thereto and his testimony as to the relationship between the church and other businesses, would allow the jury to "reasonably infer that he was familiar with the area to which he was testifying."

¶ 23    The foregoing notwithstanding, the fact remains that there was no direct testimony from the two officers that they were familiar with the area in question on the date of the offense. Although Bowling's testimony might support the inference that he was familiar with the area at the time of trial, there is nothing about the testimony that would support the inference that he was familiar with the area on the date of the offense. Bowling was not asked if he was, or had ever been, a patrol officer, nor was he asked any questions

about what his general duties as a police officer entailed, or if he was familiar, because of those duties or otherwise, with the area in question, as opposed to other areas of Vandalia. In terms of his duties, he testified only to attempting to serve an outstanding warrant, to previous experience investigating the manufacturing of methamphetamine, to using a measuring wheel customarily used for traffic accidents, and to his actions in investigating the present offense at Wright's residence. Likewise, although Halleman testified that his duty, on the night he was dispatched to Wright's residence, was "patrol," he did not testify that he was familiar with the area to which he was dispatched, as opposed to other areas of Vandalia and his larger jurisdiction of Fayette County that he might have patrolled or that he had ever patrolled that area before or since the date of the offense. In fact, when Halleman testified that he was familiar with the defendant's truck, he testified that he had seen the truck "around the county" and parked at the defendant's residence, which was not on the same street as Wright's residence.

¶ 24    In conjunction with these deficiencies in the evidence the State adduced in its effort to obtain a conviction for aggravated participation in methamphetamine manufacturing, there was also no direct testimony, from the officers or anyone else, that St. James Lutheran Church was functioning primarily as a place of worship on January 30, 2013, or, for that matter, that it had ever functioned primarily as a place of worship. Nor do we believe, based upon the testimony presented, that a reasonable jury could have inferred that the building in question was functioning primarily as a place of worship on January 30, 2013. There was no testimony to support such a temporal inference. As a matter of both logic and common sense, there is no inherent rational connection between

15

a witness's mere use of the term "church" at trial and the fact that the "church" was or was not functioning primarily as a place of worship on a particular date prior to trial. Although the State claims that if St. James Lutheran Church was not operating as a church on both the date of trial and the date of the offense, Bowling would have referred to it at trial as a "currently a church" rather than as a "church," we find this contrary to logic and common sense; more convincing is the argument of the defendant that a building that once housed a church might still be referred to, by people in the locality, by the name of the former church—or generically as the "church"—even if it no longer functioned primarily as one, either at the time of the offense or the time of the trial. We also agree with the defendant that "it is common sense that churches and other entities cease to operate" while "their physical structures and signs can remain unchanged." Moreover, the defendant is correct in his assertion that Bowling's and Halleman's consistent use of the present tense, rather than the past tense, when referring to the "church" at trial does not support the inference that the building in question functioned primarily as a place of worship on the date of the offense, as opposed to on the date of the trial. Therefore, although on appeal the State makes a valiant effort to string together the testimony in this case in such a way as to create the inference that St. James Lutheran Church was functioning primarily as a place of worship on January 30, 2013, the State failed, at trial, to adduce testimony sufficient to render such an inference reasonable. The State's presentation of evidence in support of its theory of aggravated participation in methamphetamine manufacturing was, at best, cursory. The State's theory that the jury could have strung together the pieces of Bowling's and Halleman's testimony to infer

that they were familiar with the area in question, and to further infer from their familiarity that their testimony should be construed to imply that St. James Lutheran Church was functioning primarily as a place of worship on January 30, 2013, is also dubious in light of Judge Schwarm's repeated admonitions that the jury was to refrain from independent investigation and was to "listen to the evidence and base your decision on the evidence." As the *Sims* court noted, "[t]he line between a reasonable inference and speculation can be difficult to locate." 2014 IL App (4th) 130568, ¶ 138. In this case, we believe speculation, rather than reasonable inference, would have been required for the jury to convict the defendant of aggravated participation in methamphetamine manufacturing on the basis of the foregoing evidence.

¶ 25    We note another problem with accepting the State's invitation to affirm the defendant's conviction on the basis of *Foster*: the *Foster* court omitted entirely from its legal analysis the temporal nature of the evidence the State was required to present: that the location in question must have been functioning primarily as a place of worship *on the date of the offense*.[2] Although the *Sims* court restates the holding of *Foster* to include the temporal requirement (see *Sims*, 2014 IL App (4th) 130568, ¶ 107), in fact, the *Foster* court did not address it at all (see 354 Ill. App. 3d at 567-68).[3] Perhaps within the context of a stipulation, this omission is acceptable, for a reasonable argument could be advanced

---

[2]There is no requirement, for purposes of section 407(b), that religious services actually be in session at the time of the offense (see, *e.g.*, *People v. Sparks*, 335 Ill. App. 3d 249, 257 (2002)), nor does either party in this case argue that there should be such a requirement for section 15(b)(1)(H) of the Act.

[3]With regard to affirming on the basis of *Foster*, *Sims* does not aid the State. Although the *Sims* court purported to follow *Foster* (see *Sims*, 2014 IL App (4th) 130568, ¶ 133), in fact it did not: it followed its own modified version of *Foster*—one that included the temporal requirement that was not present in *Foster*. See *id.* ¶¶ 134-138.

17

that the stipulation that the building was a church inherently included the stipulation that it was operating as such on the date of the offense in question. However, in the absence of such a stipulation, the *Foster* court's omission of the temporal requirement is fatal to the application of *Foster* beyond its unique set of facts. The Supreme Court of Illinois has held that enhancements due to proximity to places of worship pass due process and constitutional muster because places of worship, like schools and other zones of enhancement, cater to "segments of our society which may well be considered particularly vulnerable and less able to deal with the incursions of drug trafficking and its related evils." *People v. Falbe*, 189 Ill. 2d 635, 643, 647 (2000). The *Falbe* court noted the previous reasoning of this court that " '[p]laces of worship reach out and extend an invitation to the public; doors are unlocked; security is relaxed' " (*id*. at 647 (quoting *People v. Carter*, 228 Ill. App. 3d 526, 534-35 (1992))), and concluded that "[t]he very ideals of those who worship there can make them vulnerable in the same sense that school children, the poor, and the aged may be at risk" (*id.* at 647-48). Clearly, if a building does not function primarily as a place of worship on the date of an alleged offense, the concerns expressed by this court in *Carter*, and the Supreme Court of Illinois in *Falbe*, are not present. Accordingly, the absence of a temporal requirement would call into question the due process and constitutional soundness of any statutory scheme that purported to allow enhancement on the basis of proximity to a place of worship.

¶ 26    A final reason to doubt the viability of *Foster* outside the context of a stipulation is found in *Boykin*, 2013 IL App (1st) 112696, ¶ 16, which, like *Foster*, came from our colleagues in the First District, but which incorporated the temporal requirement found in

*Cadena* and other cases and concluded that the section 407(b) conviction enhancement before it could not be sustained because the evidence was "insufficient to prove beyond a reasonable doubt that 'Our Lady of Peace' was a school on the date of the offense." In any event, its citation to *Foster* and its request that we follow *Foster* notwithstanding, in this case the State concedes the temporal requirement, devoting long passages of its brief on appeal to an analysis of how the jury could have inferred that St. James Lutheran Church "existed and was in operation on [the date of the offense]" and presenting no argument that a court can dispense with the temporal requirement.

¶ 27   In the case before us, we conclude that the State did not adduce sufficient evidence at trial to render reasonable the inference that St. James Lutheran Church was functioning primarily as a place of worship on January 30, 2013. Accordingly, the State failed to prove, beyond a reasonable doubt, that the defendant was guilty of aggravated participation in methamphetamine manufacturing. We agree with our colleagues in other districts of this court that in the absence of a stipulation, the State must present evidence, from a witness or witnesses who are sufficiently familiar with the area in question, that supports a reasonable inference that the building in question was functioning primarily as a place of worship on the date of the offense. See, *e.g.*, *Rodriguez*, 2014 IL App (2d) 130148, ¶¶ 65-66.

¶ 28                                    CONCLUSION

¶ 29   For the foregoing reasons, we affirm the defendant's conviction and sentence for unlawful disposal of methamphetamine manufacturing waste, reduce the defendant's aggravated participation in methamphetamine manufacturing conviction to simple

participation in methamphetamine manufacturing, and remand for a new sentencing hearing on that conviction.

¶ 30    Affirmed in part; conviction reduced; cause remanded.

¶ 31    JUSTICE WELCH, concurring in part and dissenting in part.

¶ 32    I respectfully dissent from that portion of the majority's opinion finding that the defendant's aggravated participation in methamphetamine manufacturing should be reduced to simple participation in methamphetamine manufacturing.

¶ 33    Officer Bowling testified that on January 30, 2013, he was near Wright's residence when he smelled a chemical odor he suspected was related to methamphetamine manufacturing. He testified that the home was 111 feet south of the St. James Lutheran Church. On several other occasions during his testimony, he referred to St. James Lutheran Church as the "church." His testimony generally establishes that he had personal knowledge of the area. Defense counsel also referred to the building as a "church" on cross-examination. Deputy Sheriff Larry Halleman also testified that on January 30, 2013, he traveled "behind the church directly across from" Wright's residence. Finally, in the defendant's motion for judgment of acquittal notwithstanding the verdict, defense counsel conceded that the residence was within 1000 feet of a place of worship.

¶ 34    In viewing the evidence in light most favorable to the prosecution, a rational trier of fact could have inferred that St. James Lutheran Church was a church used primarily

20

for worship on the date of the offense. See *People v. Foster*, 354 Ill. App. 3d 564, 568 (2004). Taken together, the State demonstrated that "the methamphetamine manufacturing occur[red] within 1,000 feet of a place of worship or parsonage" to enhance the conviction to aggravated participation in methamphetamine manufacturing. 720 ILCS 646/15(b)(1)(H) (West 2012). Accordingly, I would find that the testimony was sufficient for the jury to find beyond a reasonable doubt that St. James Lutheran Church was used primarily as a place for religious worship on January 30, 2013. I would affirm the trial court's judgment.

¶ 35    I concur with that portion of the majority's opinion regarding the unlawful disposal of methamphetamine manufacturing waste.

21

2017 IL App (5th) 140300

NO. 5-14-0300

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | No. 13-CF-24 |
| | ) | |
| MICHAEL FICKES, | ) | Honorable |
| | ) | Michael D. McHaney, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Opinion Filed:**       May 4, 2017

---

**Justices:**       Honorable James R. Moore, P.J.

Honorable Richard P. Goldenhersh, J., concurred
Honorable Thomas M. Welch, J., concurred in part and dissented in part

---

**Attorneys for Appellant**       Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy Defender, Alexander G. Muntges, Assistant Appellate Defender, Office of the State Appellate Defender, Fifth Judicial District, 909 Water Tower Circle, Mt. Vernon, IL 62864

---

**Attorneys for Appellee**       Hon. Joshua Morrison, State's Attorney, Fayette County Courthouse, 221 South 7th Street, Vandalia, IL 62471; Patrick Delfino, Director, David J. Robinson, Acting Deputy Director, Jennifer M. Bernhardt, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 East Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864

---