# Illinois Official Reports

## Supreme Court

<div style="border:1px solid">

### *People v. Newton*, 2018 IL 122958

</div>

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAFARIA DEFORREST NEWTON, Appellant. |
| Docket No. | 122958 |
| Filed | October 18, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of McLean County, the Hon. Robert L. Freitag, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, State Appellate Defender, Jacqueline L. Bullard, Deputy Defender, and Sonthonax B. SaintGermain and Susan M. Wilham, Assistant Appellate Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Jason F. Krigel, Assistant Attorneys General, of Chicago, of counsel), for the People. |

Justices       JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Thomas, Kilbride, and Garman concurred in the judgment and opinion.

Justice Burke dissented, with opinion, joined by Justice Neville.


**OPINION**

¶ 1        Following a McLean County jury trial, defendant Jafaria Deforrest Newton was convicted of unlawful delivery of a controlled substance within 1000 feet of a church in violation of the Illinois Controlled Substances Act. See 720 ILCS 570/401(d)(i), 407(b)(2) (West 2014). On appeal, he contended, *inter alia*, that he was not proven guilty beyond a reasonable doubt because the State failed to offer sufficient evidence to establish that the building was operating as a church used primarily for religious worship. The appellate court affirmed. 2017 IL App (4th) 150798-U. For the following reasons, we affirm the judgment of the appellate court.

¶ 2                                BACKGROUND
¶ 3        Defendant was charged by indictment with unlawful delivery of a controlled substance and unlawful delivery of a controlled substance within 1000 feet of a church, specifically the First Christian Church located at 401 West Jefferson Street in Bloomington, Illinois.

¶ 4        At trial, Detective Jared Bierbaum of the Bloomington Police Department testified as the case agent for two controlled drug purchases that took place on December 22, 2014, and January 1, 2015. Bierbaum was a third-year detective in the vice unit, and prior to that he was a patrol officer. His main responsibilities involved drug investigations and controlled purchases of drugs in the McLean County area. He stated that his unit handled hundreds of drug cases a year.

¶ 5        On December 22, 2014, and again on January 1, 2015, Detective Bierbaum initiated an investigation and a controlled buy at 410 North Roosevelt Street. He testified regarding his familiarity with the area where the deliveries were made. He stated that he was familiar with the First Christian Church in Bloomington and that the deliveries were made about a block and a half north of the church at the intersection of West Jefferson Street and North Roosevelt Avenue. The church building spanned the whole block.

¶ 6        In both his professional and personal experience, Bierbaum had occasion to drive or walk past the church. He testified that he knew this property was a church on December 22, 2014, because it had signage for a church and he had observed cars coming and going from the church parking lot. As far as he knew, the property was still operating as a church two weeks later, on January 1, 2015. He did not go to church there that day, but he saw vehicles coming and going from the parking lot and parked his vehicle very close to the church. As far as he knew, the church was still in operation at the time of trial.

¶ 7        Bierbaum further testified that the distance between the address where the delivery was made and the front door of the church was 518 feet. While taking the measurements, Bierbaum also took photographs, including one that depicted the sign on the property. The photographs were admitted into evidence without objection. The sign read "First Christian Church" and

contained an image of a red goblet with a white cross. The photograph depicted a lit electric lantern just left of the church doors. Bierbaum noticed that the grass had been mowed and the sign was in good condition.

¶ 8 Defense counsel made no objection to Bierbaum's testimony concerning the First Christian Church and did not cross-examine him with regard to any of his testimony related to the church. In closing argument, the defense theory was that the State failed to establish that defendant actually participated in the drug transactions, arguing that he was merely present. Defense counsel made no argument regarding a lack of sufficient evidence to prove the transaction occurred within 1000 feet of a church.

¶ 9 The jury found defendant guilty of unlawful delivery of a controlled substance and unlawful delivery of a controlled substance within 1000 feet of a church, related to the drug transaction on January 1, 2015. The locality enhancement increased the penalty from a Class 2 offense to a Class 1 offense. However, due to his prior criminal history, defendant was required to be sentenced as a Class X offender with a minimum six-year sentence. He was sentenced to eight years in prison, two years above the mandatory minimum sentence.[1] Defendant filed a posttrial motion challenging the sufficiency of the evidence related to the drug transaction but made no argument that the evidence failed to show that the drug transaction occurred within 1000 feet of a church.

¶ 10 On appeal to the appellate court, defendant challenged the sufficiency of the evidence to prove him guilty of the offense. He also argued for the first time that the State failed to prove beyond a reasonable doubt that the transaction occurred within 1000 feet of a church. The appellate court disagreed, finding that, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the building housing the church was being used as a church on the date of the offense. 2017 IL App (4th) 150798-U, ¶ 29. We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. July 1, 2017).

¶ 11                                          ANALYSIS

¶ 12 Before this court, defendant no longer challenges the sufficiency of the evidence to prove him guilty of the offense of unlawful delivery of a controlled substance. Rather, he only challenges the sufficiency of the evidence regarding whether he committed the offense within 1000 feet of a church. Specifically, he maintains that the statute required the State to demonstrate with particularized evidence that the church was used primarily for religious worship at the time of the offense. He argues that Bierbaum failed to establish sufficient familiarity with the use of the First Christian Church to provide the necessary evidence to show that it was used primarily as a place of religious worship at the time of the offense. He cites our recent decision in *People v. Hardman*, 2017 IL 121453, in support.

¶ 13                            Enhanced Penalty Provision

¶ 14 Defendant's argument requires that we first address statutory construction. The fundamental objective of statutory construction is to ascertain and give effect to the

_____

[1]We note that, in this case, the Class X sentencing would have still been mandatory even if defendant had been convicted of the Class 2 offense of unlawful delivery of a controlled substance based on his criminal history. See 730 ILCS 5/5-4.5-95(b) (West 2014).

legislature's intent. *People v. Giraud*, 2012 IL 113116, ¶ 6. The most reliable indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *Id.* The words and phrases in the statute are to be construed in light of other relevant provisions and not in isolation. *People v. Bradford*, 2016 IL 118674, ¶ 15. Where the language is plain and unambiguous, it must be applied without resort to further aids of statutory construction. *Id.* Statutory construction is an issue of law subject to *de novo* review. *People v. Howard*, 2017 IL 120443, ¶ 19.

¶ 15    Defendant was convicted of section 401(d)(i) of the Illinois Controlled Substances Act, which makes it unlawful to deliver less than one gram of any substance containing cocaine. 720 ILCS 570/401(d)(i) (West 2014). Section 407(b) enhances the penalty for delivering controlled substances within certain proximity to sensitive locations where vulnerable populations may be located, including a school, church, public park, public housing complex, or senior citizen home. *Id.* § 407(b); *People v. Falbe*, 189 Ill. 2d 635, 647-48 (2000).

¶ 16    Relevant to this case, section 407(b)(2) of the Act enhances the penalty for that offense from a Class 2 to a Class 1 felony when the violation occurs "within 1,000 feet of the real property comprising any church, synagogue, or other building, structure, or place used primarily for religious worship." 720 ILCS 570/407(b)(2) (West 2014).

¶ 17    The statute specifically lists a church and synagogue as places subject to the locality enhancement. A church and synagogue are both examples of buildings that are, by definition, used primarily for religious worship. Webster's Third New International Dictionary 404, 2318 (1993). The next phrase, "or *other* building, structure, or place used primarily for religious worship," identifies a general catchall of all other buildings, structures, or places not listed that share that common attribute. (Emphasis added.) 720 ILCS 570/407(b)(2) (West 2014). The legislature recognized that it would not be possible to specifically list all places used primarily for religious worship. Thus, under the plain reading of the statute, for a location to fall within the ambit of the statute, it must be property that is used primarily for religious worship, and the legislature has already determined that a church or a synagogue meets that requirement.

¶ 18    Defendant argues our decision in *Hardman* requires that we construe the statute to require particularized evidence that the enhancing locality was a church used primarily for religious worship, essentially arguing for a construction in which "used primarily for religious worship" modifies church. In *Hardman*, however, we were not specifically called upon to construe the language of section 407(b)(2) pertaining to churches. Rather, we were called upon to construe the locality enhancement provision for certain offenses occurring within 1000 feet of the real property comprising a school under section 407(b)(1). *Hardman*, 2017 IL 121453, ¶ 14.

¶ 19    In rejecting the defendant's argument that particularized evidence was needed to show that a building is an active or operational school on the day of the offense, we contrasted the school provision with the provision at issue here and with the provision in section 407(c) (720 ILCS 570/407(c) (West 2012)). *Hardman*, 2017 IL 121453, ¶ 32. We noted that, unlike the school provision, the provision at issue here had a "use" requirement, which we would not read into the school provision, and that section 407(c) made the time of day, time of year, and whether classes were currently in session at the time of the offense irrelevant. *Id.* ¶¶ 31-32.

¶ 20    To clarify, in *Hardman*, we were not asked to consider whether a given place is a place primarily used for religious worship. That question is ultimately fact intensive and will depend on the particular facts and circumstances of a given case. In some cases, the trier of fact may be

presented with a property that has the classic, iconic characteristics of a church. As explained, a "church" is, by definition, already recognized in its ordinary and popular meaning as a place primarily used for religious worship. To say then, as defendant does, that under the plain reading of the statute the State must prove that the enhancing locality was a church "used primarily for religious worship" is redundant. In that case, as the legislature has already determined, the trier of fact may make reasonable inferences that flow from the facts presented and apply his or her common knowledge regarding a church to find that it is what it purports to be.

¶ 21 In other cases, the trier of fact may be asked to consider whether other particular structures are places of worship. See, *e.g.*, *Falbe*, 189 Ill. 2d at 648-49 (where the defendant posed hypotheticals about whether an abandoned barn was a "place of worship"); *People v. Sparks*, 335 Ill. App. 3d 249, 256 (2002) (whether a Salvation Army chapel inside a Salvation Army building was a place used primarily for religious worship). In those cases, it may be more difficult for the trier of fact to discern whether the particular structure is being used primarily as a place of worship because it lacks the traditional characteristics of a place of worship. Accordingly, to meet its burden, the State may need to provide additional evidence in those cases to determine how the particular structure is being used. See, *e.g.*, *Sparks*, 335 Ill. App. 3d at 251, 258 (holding that the evidence was sufficient to prove that the Salvation Army chapel was a place used primarily for religious worship where the minister testified that the chapel located in the building was used exclusively for religious services).

¶ 22 In this case, the trier of fact was not asked to consider whether some "other" building or structure constituted a place used primarily as a place of worship. Here, the charging instrument alleged that the transaction occurred within the relevant proximity to the First Christian Church. Thus, in this context, the only question is whether the State proved beyond a reasonable doubt that there was a church at that location at the time of the offense.

¶ 23                                    Sufficiency of the Evidence
¶ 24 When considering a challenge to the sufficiency of the evidence, a reviewing court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements beyond a reasonable doubt. *People v. Wright*, 2017 IL 119561, ¶ 70. "[I]t is not the function of this court to retry the defendant." *People v. Evans*, 209 Ill. 2d 194, 209 (2004). All reasonable inferences from the evidence must be drawn in favor of the prosecution. " '[I]n weighing evidence, the trier of fact is not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.' " *Hardman*, 2017 IL 121453, ¶ 37 (quoting *People v. Jackson*, 232 Ill. 2d 246, 281 (2009)). We will not reverse the trial court's judgment unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *Wright*, 2017 IL 119561, ¶ 70.

¶ 25 In this case, Detective Bierbaum identified the real property at 401 West Jefferson Street as the First Christian Church and presented testimony that he had personal knowledge and familiarity with the area. He had been a detective and patrol officer in the jurisdiction for several years and was familiar with the First Christian Church, having driven or walked by it in his professional and personal experience. His professional experience included patrolling and

surveillance in the community. He testified that the First Christian Church was operating as a church at all relevant times. There was signage with the name of a church, as well as a cross and a goblet, all probative evidence from which a trier of fact could discern there was a church at that location. The jury was also made aware that the lantern by the front doors of the building was lit, the grass had been mowed, and cars were seen coming and going from the parking lot.

¶ 26    Taken in the light most favorable to the State, this evidence is not so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt that there was a church at 401 West Jefferson Street and it was functioning as it purported to be on the day of the offense. We will not substitute our judgment for that of the trier of fact on these matters. *Evans*, 209 Ill. 2d at 209.

¶ 27    Defendant's essential argument is that one could imagine a scenario in which a church might have been converted into another use or might be abandoned. Merely because these scenarios are possible does not mean that a jury cannot rely on the reasonable inferences that flow from the unrebutted evidence. The State need not disprove or rule out all possible factual scenarios. *Hardman*, 2017 IL 121453, ¶ 37; Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 401.1, at 147 (9th ed. 2009) ("The inference to be drawn need not be the only conclusion logically to be drawn; it suffices that the suggested inference may reasonably be drawn therefrom. [Citations.]").

¶ 28    Nor, as defendant conceded, did the State have to establish that there were worship services going on at the specific time of the unlawful delivery. *People v. Daniels*, 307 Ill. App. 3d 917, 929 (1999). Additionally, a trier of fact is allowed to consider the evidence in light of his or her own knowledge and observations in the affairs of life. *People v. Hobley*, 182 Ill. 2d 404, 465 (1998). Taking the unrebutted evidence in the light most favorable to the State, we cannot say that no rational trier of fact could have found that the evidence presented gave rise to a reasonable inference that the location was a church and that it was functioning as it purported to be at the time of the offense.

¶ 29    Defendant urges us to follow *People v. Cadena*, 2013 IL App (2d) 120285, and *People v. Fickes*, 2017 IL App (5th) 140300, cases where the appellate court found a lack of sufficient evidence. We find those cases distinguishable. In *Cadena*, the only evidence presented was a police officer's affirmative response to the leading question that the Evangelical Covenant Church was an active church and that the church was 860 feet from the drug transaction. The court held, under those facts, the testimony lacked any temporal context (*Cadena*, 2013 IL App (2d) 120285, ¶ 16) and lacked any indication as to the officer's personal knowledge that the location was an active church at the time of the offense (*id.* ¶ 18). The court did not hold that knowledge of specific church activities was a necessary condition to proving the enhancing location was a church at the time of the offense. Rather, the court stated that a police officer, "who testified to being familiar with the church from having regularly patrolled the neighborhood, would have had sufficient personal knowledge to testify as to the church's active status." *Id.* In *Fickes*, the only testimony was essentially that the transaction took place just south of the St. James Lutheran Church, behind the church. The court found a temporal problem with the proof at trial and that the officer's mere reference to the term "church" alone was insufficient to create a reasonable inference that it functioned as a church at the time of the offense. *Fickes*, 2017 IL App (5th) 140300, ¶ 24. Here, the State's evidence does not suffer

from these infirmities.

¶ 30                                          CONCLUSION

¶ 31       For all of the foregoing reasons, we affirm the judgment of the appellate court, which affirmed defendant's conviction for unlawful delivery of a controlled substance within 1000 feet of a church.

¶ 32       Affirmed.

¶ 33       JUSTICE BURKE, dissenting:

¶ 34       I disagree with the majority's holding that the State presented sufficient evidence to convict defendant of unlawful delivery of a controlled substance within 1000 feet of a church in violation of the Illinois Controlled Substances Act (Act). See 720 ILCS 570/401(d), 407(b)(2) (West 2014). The majority holds that evidence that a particular building has the "traditional characteristics" of a church is sufficient to prove the enhancing factor beyond a reasonable doubt. The majority's statutory analysis is unconstitutional and unworkable, and it contravenes the purpose of the statute. As a result, the majority's conclusion with regard to the sufficiency of the evidence is fundamentally erroneous. For these reasons, I respectfully dissent.

¶ 35       At issue in this appeal is whether defendant was convicted beyond a reasonable doubt of unlawful delivery of a controlled substance within 1000 feet of a church on January 1, 2015, pursuant to section 407(b)(2) of the Act. *Id.* § 407(b)(2). The statute enhances the penalty for unlawful delivery of a controlled substance from a Class 2 to a Class 1 felony when the violation occurs "within 1,000 feet of the real property comprising any church, synagogue, or other building, structure or place used primarily for religious worship." *Id.* The majority begins its analysis by recognizing that the plain, ordinary meaning of the word, "church," as defined in the dictionary, is a "building *** used primarily for religious worship." *Supra* ¶ 17 (citing Webster's Third New International Dictionary 404 (1993)). I agree with this definition. When a statute does not expressly define a term, it is appropriate for a reviewing court to use a dictionary to ascertain the ordinary and popularly understood meaning of the term. See *People v. Bingham*, 2014 IL 115964, ¶ 55; *People v. Chapman*, 2012 IL 111896, ¶ 24.

¶ 36       Having defined the meaning of the word "church," the logical next step would be to determine whether there was evidence that, in this case, the building at issue was "used primarily for religious worship" at the time of defendant's offense. Remarkably, however, the majority does not do this. Instead, the majority holds that evidence that the exterior of the building *looks* like a church, *i.e.*, "has the classic, iconic characteristics of a church," is sufficient. *Supra* ¶ 20. The majority holds that, if the State has proven that a building has the "traditional characteristics" of a church or synagogue, then it has also proven that the building was "functioning" as a church or synagogue on the date of the offense. *Supra* ¶¶ 20, 26-28, 31. In other words, if a building has the "classic" appearance of a church or synagogue, the State does not need to present *any* additional evidence regarding how the structure was actually being used. *Supra* ¶ 20. However, if a building or structure "lacks the traditional characteristics of a place of worship," the State, in order to meet its burden of proof, "may need to provide additional evidence *** to determine how the particular structure is being used." *Supra* ¶ 21.

¶ 37    According to the majority, the reason for relieving the State of its burden of proving that a church or synagogue is used primarily for religious worship is because "churches" and "synagogues" already are defined as buildings used primarily for religious worship. Requiring the State to present additional evidence of the primary use of these buildings would be "redundant." *Supra* ¶¶ 18-20. Thus, according to the majority, the ultimate fact that a building is used primarily for religious worship is presumed from evidence that the building's exterior has the "classic" appearance of a church or synagogue. Implicit in this reasoning is that a defendant can rebut this presumption by presenting evidence that a building that looks like a church or synagogue is, in fact, not being used primarily for religious worship. There are a number of serious problems with this analysis.

¶ 38    First, the majority is reading into the statute a rebuttable presumption of the existence of an element of the offense. This is a violation of defendant's due process rights. A mandatory presumption is a legal device that requires the fact finder to infer the existence of the ultimate or presumed fact upon proof of a predicate fact. *People v. Pomykala*, 203 Ill. 2d 198, 203 (2003); *People v. Watts*, 181 Ill. 2d 133, 141-43 (1998). Under Illinois law, all mandatory presumptions are considered *per se* unconstitutional. *Pomykala*, 203 Ill. 2d at 203-04. A mandatory rebuttable presumption that shifts the burden of persuasion or burden of production to the defendant violates due process because it relieves the State of its burden to prove each element of the offense beyond a reasonable doubt. *Watts*, 181 Ill. 2d at 143, 145-46 (citing *Sandstrom v. Montana*, 442 U.S. 510, 524 (1979)). Shifting the State's burden to the defendant also infringes on the right to trial by jury on that element and places undue pressure on a defendant to waive his right to remain silent. *Id.* at 146. Consequently, the majority's holding, relieving the State of its burden to prove beyond a reasonable doubt that an alleged church is used primarily for religious worship, is unconstitutional.

¶ 39    Furthermore, the presumption that a building is being used primarily for religious worship merely because its façade has the traditional appearance and iconic characteristics of a church is simply not reasonable. A church can be abandoned or repurposed for other uses and still retain the exterior architecture, and even the signage, of a church. See *People v. Fickes*, 2017 IL App (5th) 140300, ¶ 24. It is not uncommon for former churches to be purchased and converted into other uses, such as community centers, homes, or businesses. People in the neighborhood may even continue to refer to such a building as a "church," even though it is no longer in use for religious services. *Id.* Conversely, many churches with modernist architectural designs lack the so-called "traditional," "iconic" characteristics and iconography of a church and, yet, are still used primarily for religious services.

¶ 40    The majority's reliance on evidence of "traditional," "iconic" characteristics of a church is flawed for another reason. The majority never defines what it means by the "classic, iconic characteristics" of a church. Without any guidance by this court, prosecutors and the lower courts will have difficulty applying the majority's rule given the wide variety of structures in use as churches. For this reason alone, it is much more logical to focus on a particular building's *primary use* in determining whether the building is a "church" within the meaning of the statute. The General Assembly obviously intended that interpretation when it drafted the statute to require evidence that an unlawful delivery took place "within 1,000 feet of the real property comprising any church, synagogue, or other building, structure, or place *used primarily for religious worship*." (Emphasis added.) 720 ILCS 570/407(b)(2) (West 2014).

¶ 41     The majority supports its holding that no evidence of primary use is required if a building has the "traditional characteristics" of a church by pointing to the phrase, "or other building, structure, or place used primarily for religious worship." *Id.* Reasoning that this phrase expressly requires the State to demonstrate that a building *other than* a church or synagogue is used primarily for religious worship, the majority contends that no such evidence is required if a building is a church or synagogue. *Supra* ¶ 20. The majority's analysis is a *non sequitur*. The phrase in the statute referring to "other" buildings, structures, or places has nothing to do with determining whether a particular building meets the definition of a "church" within the meaning of the statute. If the legislature amended section 407(b)(2) to remove the phrase, "or other building, structure, or place used primarily for religious worship," and the statute simply enhanced the penalty from a Class 2 to a Class 1 felony when the violation occurs "within 1,000 feet of the real property comprising any church or synagogue," the State would still have to prove that the building in question is a "church," *as that term is defined according to its ordinary and popularly understood meaning*. The fact that the statute recognizes that other types of buildings may be primarily used for religious worship does not negate the requirement for the State to demonstrate that a building alleged to be a church is, in fact, a church, *i.e.*, a building used primarily for religious worship.

¶ 42     Moreover, consider what the majority's reading of the statute means. If an offense occurs within 1000 feet of a building with the "traditional" appearance and signage of a Christian church or Jewish synagogue, the State does not need to present additional evidence of the building's primary use. However, if the offense occurs within 1000 feet of an "other building," such as an Islamic mosque or Hindu temple, with the "traditional" appearance and signage correlated with these structures, the State is required to provide additional evidence that the building is primarily used for religious worship. Since this interpretation raises obvious concerns that it violates the establishment clauses of both the first amendment to the United States Constitution (U.S. Const., amend. I) and the Illinois Constitution (Ill. Const. 1970, art. I, § 3), I am certain this is not what the General Assembly intended. The most obvious reading of the statutory language is that the legislature intended to apply a consistent definition and evidentiary requirement to all places of worship, regardless of faith.

¶ 43     The majority's holding that the statute requires no additional evidence of a church's primary use if it has the traditional characteristics of a "church" is also at odds with the purpose of the statute. In construing a statute, our primary goal is to ascertain and give effect to the legislative intent. *People v. Davis*, 199 Ill. 2d 130, 135 (2002). To that end, the court may consider, in addition to the statutory language, "the reason and necessity for the law, the problems that lawmakers sought to remedy, and the goals that they sought to achieve." *People v. Martin*, 2011 IL 109102, ¶ 21. The reason for enhancing the penalty for delivery of a controlled substance within a certain distance of places such as schools, nursing homes, and places of worship is to protect vulnerable populations from drug trafficking and its related evils. See *People v. Falbe*, 189 Ill. 2d 635, 643, 647 (2000). As explained by this court,

> "each of the protected zones specified in section 407 appears to correspond to a segment of our society which may well be considered particularly vulnerable and less able to protect itself from the incursions of drug trafficking. Generally speaking, schools, public housing, parks, places of worship, nursing homes, assisted-living centers, and senior citizens facilities are frequented by those who may be least able or willing to deal with drug trafficking and the crimes associated with it." *Id.* at 643.

"As noted in *People v. Carter*, 228 Ill. App. 3d 526, 534-35 (1992), 'Places of worship reach out and extend an invitation to the public; doors are unlocked; security is relaxed.' The very ideals of those who worship there can make them vulnerable in the same sense that school children, the poor, and the aged may be at risk." *Id.* at 647-48.

Clearly, these concerns are not present unless the building was active and in use as a place of worship on the date of the offense.[2] See *Fickes*, 2017 IL App (5th) 140300, ¶ 25. If a church is no longer used for religious services, it is removed from the purview of the statute as a place in need of special protection from drug trafficking. Accordingly, the majority's definition of the term "church" as a "building with the traditional characteristics of a church" does not further the purpose of the statute.

¶ 44    Unlike the majority, I would adhere to the plain meaning of the statute and require the State to present evidence beyond a reasonable doubt that the building alleged to be a church was used primarily for religious worship on the date of the offense. The evidence introduced at trial in this case fell short of establishing this fact. Detective Bierbaum testified that he was familiar with the First Christian Church and had driven or walked past the church in his professional and personal experience. He testified that on January 1, 2015, the date of the offense, he parked across the street from the church and saw cars coming and going from the parking lot. He also observed signage for a church. Detective Bierbaum testified that, as far as he could tell, the property was operating as a church on the date of the offense and was still a church at the time of trial. The detective did not enter the building or speak to anyone affiliated with the church. Nor did he testify that he had any knowledge that religious services were regularly held at that location. Detective Bierbaum further testified that he took a photograph of the building's exterior and signage on an unspecified date sometime after January 1, 2015. Importantly, no witness testified that the photo accurately depicted the building as it appeared on January 1, 2015. The photo in the record depicts part of the façade of a brick building, an outer door with a lantern affixed beside it, and a sign placed in the ground a short distance from the building. The sign in the photo states, "First Christian Church," with an image of a cross and goblet.

¶ 45    If the plain, ordinary meaning of the word "church" is applied to the evidence, it is clear the State did not establish beyond a reasonable doubt that the building was primarily used for religious worship. The State failed to elicit testimony from anyone with personal knowledge of the building's primary use on the date of the offense. No pastor or parishioner testified that religious services were held at that location or how often they occurred. Detective Bierbaum testified that he did not enter the building or speak to anyone affiliated with the church. The signage did not list the days and times for religious services. Nor did the State produce a church bulletin or other documentation that the church regularly conducted religious services.

¶ 46    In my opinion, if we are to enhance a defendant's penalty for unlawful delivery of a controlled substance based solely on the fact that it occurs within 1000 feet of a church, the State should have to present evidence beyond a reasonable doubt that the building was active and in use primarily for religious worship on the date of the offense. This is a minimal burden, easily met. The State should have no difficulty obtaining documentation, testimony, or an

<hr />

[2]I agree with the majority that the version of the statute in effect on January 1, 2015, did not require the State to prove that worship services were actually going on at the time of the unlawful delivery. The current version now requires such evidence. See Pub. Act 100-3 (eff. Jan. 1, 2018) (amending 720 ILCS 570/407(b)(2)).

affidavit attesting to the fact that a church regularly holds religious services. See *People v. Sims*, 2014 IL App (4th) 130568, ¶ 106 ("One might think that because several additional years of imprisonment could be riding on that issue [citation], the State would 'elicit testimony from someone affiliated with the church,' *e.g.*, a pastor or parishioner [citation]."). In this case, I would hold that the State did not carry its burden of proof with respect to this element.

¶ 47        For the foregoing reasons, I respectfully dissent.

¶ 48        JUSTICE NEVILLE joins in this dissent.