2022 IL App (1st) 192053-U

No. 1-19-2053

Order filed July 27, 2022

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 13414 |
| | ) | |
| MUHAMMAD FAHIM, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's conviction for kidnapping is affirmed. Rational factfinder could have reasonably credited victim's testimony and found that evidence established elements of offense beyond reasonable doubt.

¶ 2    Following a bench trial, defendant Muhammad Fahim was found guilty of kidnapping (720 ILCS 5/10-1 (West 2016)) and sentenced to three years' imprisonment. He appeals, arguing that the victim's testimony was incredible, and the evidence did not satisfy the elements of the offense. We affirm.

¶ 3    Defendant was charged by indictment with kidnapping (720 ILCS 5/10-1(a)(1) (West 2016)) and unlawful restraint (720 ILCS 5/10-3(a) (West 2016)) following an incident on July 4, 2017.

¶ 4    At trial, Kasia Pieczara testified that she and her friend Scott Slocum went to North Avenue Beach in Chicago on July 4, 2017. They arrived around 2 p.m., and each consumed two beers. Around 6 or 6:30 p.m., Pieczara left the beach to use the bathroom. The two agreed that if they could not find each other afterwards, they would meet at their hotel.

¶ 5    Pieczara could not find Slocum after she used the bathroom and requested a ride to the hotel using the Uber rideshare application on her phone. The application paired Pieczara with a driver and displayed his face and license plate number; she identified this person in court as defendant. Initially, they could not locate each other. Defendant called her "multiple times" attempting to find her. Eventually, she located his vehicle and approached. Before entering, she finished a phone call with Slocum. She denied being on her phone or intoxicated during her interaction with defendant, or entering defendant's vehicle before 6:54 p.m.

¶ 6    After entering the vehicle, Pieczara looked at her Uber application and saw that the ride had "disappeared." She asked defendant if the ride was cancelled, and he said yes. Pieczara then asked to pay defendant cash to drive her to the hotel. Defendant refused and said, "The only way I will take you home is if you have a quickie with me." He also stated "just have sex with me." Pieczara refused, and defendant started driving away. Pieczara tried to exit the vehicle by unlocking the door five to seven times, but defendant re-locked the door each time. Eventually, she unlocked her door, jumped from the moving vehicle, and ran across one lane of traffic on a

busy street. She was in the vehicle for two to three minutes but was unsure in which direction defendant drove.

¶ 7 Pieczara ran for "a little bit," called her family, who did not answer, and eventually requested another Uber ride to the hotel because she was unfamiliar with the area. As the second Uber approached the hotel, Pieczara noticed police officers nearby. She exited the vehicle and told an officer what happened. At the hotel, she called 911 and provided defendant's name and license plate number to the responding officer. On July 6, 2017, Pieczara spoke to Chicago police detective Daniel Lenihan, and again recounted the incident. On July 13, 2017, Pieczara went to the police station and identified defendant's photograph in a photo array.

¶ 8 The State introduced several exhibits comprising printouts of information from Pieczara's Uber account showing that defendant was her driver on July 4, 2017, and the ride began at 6:40 p.m. at "North Lake Shore Drive and U.S. 41 and West LaSalle Drive" in Chicago. The end point was 6:54 p.m. at West LaSalle Drive. The second Uber driver met Pieczara at 7:15 p.m. between 3000 and 3430 North Lake Shore Drive.

¶ 9 The State also introduced records from Pieczara's cell phone provider. These exhibits, included in the record on appeal, show that on July 4, 2017, she requested the Uber ride at 6:34 p.m. At 6:50 p.m., she received a call from defendant, and after a three-minute conversation, she located his vehicle. At 6:54 p.m., Slocum called her, and the call lasted two minutes.

¶ 10 Pieczara further testified that she did not cancel or edit the requested ride from defendant on the Uber application prior to entering his vehicle. She did not call 911 while in defendant's vehicle because she was "scared" and "needed to get out." She did not tell the first police officer that she had consumed alcohol.

¶ 11    On cross-examination, Pieczara testified that she lived in the city for college and had visited the area near North Avenue Beach "occasionally." She agreed that the beach was crowded with people and traffic on July 4, 2017. Defendant called her six times before she located him. She first entered defendant's vehicle at 6:54 p.m. She received the call from Slocum at 6:54, was on the phone for two minutes, and then called her father at 6:57 p.m. She maintained that she was not on the phone, however, while inside the vehicle, and testified that "I'm assuming [the phone company] round up because they don't have exact times. So I probably got off the phone with [Slocum] sometime in between 6:55 and 6:56. I called my dad right when I got out of the vehicle." She called both her father and sister after the incident, but neither answered. She spoke to Slocum at 7:04 p.m., but he did not call 911 because she told him she would at the hotel. Pieczara maintained that she told the officer who took her statement that she jumped from the moving vehicle. Her Uber receipt did not reflect a cancellation fee.

¶ 12    Chicago police officer John Kelyana testified that at approximately 7:30 p.m. on July 4, 2017, he met with Pieczara outside the hotel. She was "hysterical and very upset," explained what happened, and provided defendant's name, license plate number, and the make of his vehicle. She did not appear intoxicated. On cross-examination, Kelyana testified that Pieczara told him the vehicle "was moving and she attempted to get out," but did not say that she had to "jump" from the vehicle.

¶ 13    Chicago police detective Daniel Lenihan testified that he received the assignment for Pieczara's matter on July 5, 2017 and spoke to her shortly thereafter. She provided information regarding defendant and his vehicle. Lenihan identified defendant and then created a photo array that included his photograph. Pieczara identified defendant in that array.

¶ 14 The State introduced a printout of defendant's Uber records. Lenihan reviewed the records and noticed a "time gap" from approximately 6:55 p.m. through 7:09 p.m. that showed "no coordinates and no times" for defendant's vehicle.

¶ 15 Defendant was arrested, and Lenihan *Mirandized* and interviewed him on August 18, 2017. Defendant stated that a couple entered his vehicle on the evening of July 4, 2017, near North Avenue Beach, but they were the wrong "fare," so he dropped them off. He did not identify either individual as Pieczara and denied meeting her. Lenihan interviewed defendant again that evening, with an assistant state's attorney present. Defendant again denied meeting Pieczara and added that Uber cancelled the fare while the couple was inside his vehicle. On cross-examination, Lenihan acknowledged that he did not show defendant a photograph of Pieczara, and his statements were not memorialized or recorded.

¶ 16 Chicago police officer Kevin Kilroy testified that he has training in both Uber and a global positioning system (GPS) tracking program called GeoTime. The State introduced electronic data provided by Uber, and a PowerPoint and video Kilroy generated using GeoTime that displayed GPS information for defendant's vehicle during the incident.

¶ 17 The video and PowerPoint, contained in the record on appeal, depict a street map of the north side of Chicago. The video displays a moving icon representing defendant's vehicle and the path it followed in the relevant timeframe. Around 6:54 p.m., the icon stops moving near North Avenue Beach, and then reappears further north near Fullerton Avenue and Cannon Drive at approximately 7:11 p.m. On the PowerPoint, notes are pinned on the map at the vehicle's various locations to indicate the time and location of relevant events. One slide relates that at 6:53:19, near North Avenue Beach, defendant picked up Pieczara; at 6:54:27, very close to the same location,

he "turned off his Uber app;" and at 7:10:59, further north near Fullerton and Cannon, he "turns the Uber app back on."

¶ 18    On cross-examination, Kilroy agreed that the records indicate that defendant's vehicle stopped at 6:53:19 and testified that he believed defendant's phone likely shut off completely at 6:54:28.

¶ 19    Defendant testified that he had worked for Uber for approximately 18 months prior to the incident. Uber's policy regarding cancelled rides is that the driver should not transport the passenger. Uber also mandates that drivers not accept cash from passengers.

¶ 20    On July 4, 2017, defendant accepted the ride request from Pieczara at approximately 6:34 p.m. Near the pickup location, he noticed heavy traffic and many people. He called Pieczara for her exact location, and she stated, "I am totally drunk. I'm intoxicated." After six calls, defendant finally located Pieczara. She was with a man, and the two entered the vehicle with Pieczara on her phone.

¶ 21    Defendant drove away, but shortly thereafter, the trip was cancelled, though defendant did not do so himself. Defendant asked if Pieczara cancelled the ride, and she asked if defendant would complete the ride for cash. He refused, and Pieczara exited the vehicle angrily, along with her companion. This interaction lasted one to two minutes. At this point, defendant deactivated the Uber application so he could leave the area without another fare because the area was too busy. He spent the next 14 minutes driving away from North Avenue Beach with his Uber application shut off. He never solicited Pieczara for sexual contact or prevented her from exiting his vehicle.

¶ 22    Approximately two days later, defendant received a complaint from Uber. The complaint was "very vague" and only mentioned that a customer was "unhappy." It did not contain the date

of the alleged incident or the complainant's name. Police officers arrested defendant on August 17, 2017. He told officers that two people entered his vehicle on July 4, 2017, including an intoxicated woman. Defendant denied telling the police that the intoxicated woman never entered his vehicle.

¶ 23 On cross-examination, defendant testified that Pieczara did not enter the vehicle at 6:40 p.m. on July 4, 2017. He believed the Uber app automatically started the trip. Instead, Pieczara entered the vehicle at 6:54, and she and the other individual exited in less than two minutes. Defendant did not see Pieczara again that night.

¶ 24 The State called Lenihan in rebuttal, who testified that defendant told him during their first interview that he never picked up Pieczara, and instead stated a different couple entered the vehicle. During the second interview, defendant again insisted he never picked up Pieczara.

¶ 25 The court found defendant guilty on both counts, explaining that Pieczara was "an extraordinarily credible witness." Her story was "entirely credible" and "unimpeached." The court also believed that the Uber record, phone record, and officer testimony, including Kelyana's account that Pieczara did not appear intoxicated, supported her account. Conversely, the court found defendant's account "somewhat difficult to totally accept," specifically his explanation as to why he deactivated the Uber app and his claim that Pieczara entered the vehicle with another man.

¶ 26 The court denied defendant's motion for a new trial. The matter moved to sentencing, where the court merged unlawful restraint into kidnapping and imposed three years' imprisonment for kidnapping (720 ILCS 5/10-1 (West 2016)). Defendant did not file a motion to reconsider sentence.

¶ 27    On appeal, defendant argues that Pieczara's testimony was incredible and the evidence did not establish the elements of kidnapping.

¶ 28    On a challenge to the sufficiency of the evidence, "a reviewing court must determine whether, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the required elements beyond a reasonable doubt." *People v. Newton*, 2018 IL 122958, ¶ 24. The reviewing court must draw all reasonable inferences in favor of the State (*id*.) and may not substitute its judgment for that of the trial court regarding witness credibility or the weight of the evidence. *People v. Gray*, 2017 IL 120958, ¶ 35. Reversal is improper unless the evidence "is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.*

¶ 29    To prove kidnapping here, the State had to show that defendant secretly confined Pieczara against her will. 720 ILCS 5/10-1 (West 2016). Confining another in a moving vehicle in public against his or her will can constitute secret confinement. See *People v. Gonzalez*, 239 Ill. 2d 471, 481-82 (2011) ("This court long ago rejected any per se rule that a victim visible in a public place precludes a finding of secret confinement." (citing *People v. Bishop*, 1 Ill. 2d 60 (1953))). The supreme court has defined "secret" as "concealed, hidden, or not made public," and found that the State may establish this element by evidence "of the secrecy of the confinement or the secrecy of the location of the confinement." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 227 (2009).

¶ 30    Here, Pieczara and defendant agreed that she entered his vehicle around 6:54 p.m. but offered differing accounts of the other events on July 4, 2017. Pieczara testified that just prior to entering defendant's vehicle, she finished a phone call with Slocum. After entering the vehicle and realizing the ride was cancelled, she offered to pay defendant cash to take her to her destination,

but he refused, drove away, and told Pieczara he would not drive her to the destination unless she had a "quickie" with him. Pieczara refused and tried to exit the vehicle, but defendant repeatedly re-locked the doors after she unlocked them. Ultimately, she unlocked a door and jumped from the moving vehicle.

¶ 31    Defendant testified that Pieczara, who was intoxicated, entered his vehicle with another man, became angry when the ride was cancelled, and left without further incident. Their interaction lasted less than two minutes. He claimed he did not cancel the ride himself and deactivated the Uber application around 6:54 p.m. only so that he would no longer have to accept rides in the crowded North Avenue Beach area.

¶ 32    The State introduced records from Uber and Pieczara's cell phone provider. The phone records show that she received the phone call from Slocum around 6:54 and next called her father at 6:57. At 6:54:27, defendant's Uber application deactivated while he was near North Avenue Beach. The Uber application reactivated around 7:10:59, near Fullerton and Cannon. Pieczara entered the second Uber near the 3000 block of North Lake Shore Drive around 7:15 p.m.

¶ 33    Kelyana testified that when he spoke to Pieczara after the incident, she did not appear intoxicated, and relayed that defendant propositioned her and locked her in the vehicle, though she ultimately escaped. Pieczara did not specifically tell Kelyana that she jumped from the moving vehicle. Lenihan testified that during two pretrial interviews, defendant denied picking up Pieczara, and instead interacted with a man and woman whose ride was cancelled, causing the woman to leave angrily.

¶ 34    On this record, a rational factfinder could have credited Pieczara, and based on her testimony, found the evidence sufficient to prove that defendant kidnapped her. The trial court

observed the witnesses and found that Pieczara testified more credibly than defendant. We may not set aside this finding on appeal unless it is unreasonable or improbable, and this record does not support such a finding. *Gray*, 2017 IL 120958, ¶ 35. The court also found that defendant did not testify credibly about why he deactivated his Uber application, and defendant's choice to deactivate his application at a busy time with many available fares permits the inference that something besides business reasons motivated his decision. See *Newton*, 2018 IL 122958, ¶ 24 (when reviewing the sufficiency of the evidence, the reviewing court must draw all reasonable inferences in favor of the State).

¶ 35    Defendant claims that Pieczara's phone records show that she falsely testified that she was not on the phone with Slocum when she entered the vehicle, as she agreed that she entered the vehicle at 6:54, but her records show she did not end the call with Slocum until 6:56. This argument fails to account for the evidence, and inferences therefrom, which suggest the relevant events occurred in a short period of time. Pieczara stated that defendant drove away and immediately propositioned her, at which time she refused, then tried to open the door five to seven times before successfully doing so. A reasonable inference is that this conduct could have taken seconds, not minutes. Based on this understanding, Pieczara could have ended the call with Slocum around 6:56, rode with defendant during the incident for a short time, then exited at 6:57 and called her father. Moreover, even if Pieczara were on her phone for a short time during the ride, this detail is not so consequential that it would justify rejecting her testimony wholesale. It is the purview of the factfinder to weigh inconsistencies in a witness's testimony and decide which portions to credit. See *People v. Cunningham*, 212 Ill. 2d 274, 283 (2004) ("[I]t is for the fact finder to judge how flaws in part of the testimony affect the credibility of the whole."). Thus, even if Pieczara were

briefly on the phone while in the vehicle, a rational factfinder could still accept the remainder of her testimony.

¶ 36    Defendant also argues that the location where the second Uber met Pieczara rebuts her testimony, as it would be impossible for her to travel on foot that far north between when she exited defendant's vehicle and when she entered the second Uber. This argument is speculative, however, as no evidence established the distance or travel time between the second pick up location and Pieczara's location when she exited defendant's vehicle. Pieczara testified that defendant drove her for a time, she ran as she exited the vehicle, and she relocated again to meet the second Uber. The record shows she entered the second Uber 15 to 20 minutes after the incident with defendant. A factfinder could reasonably infer that defendant drove Pieczara north and she ran further north when she exited the vehicle, ultimately arriving at the approximate location where the second Uber met her.

¶ 37    Defendant further claims Pieczara should be discredited because she was intoxicated. Pieczara testified she consumed two beers and was not intoxicated, and Kelyana corroborated this testimony. Defendant, conversely, testified that Pieczara stated she was intoxicated. Thus, the record provides a reasonable basis for the factfinder to draw either inference, and again, because this is a challenge to the sufficiency of the evidence, we must draw all reasonable inferences in favor of the State. See *Newton*, 2018 IL 122958, ¶ 24.

¶ 38    Finally, defendant alleges other inconsistencies in Pieczara's testimony, and argues that on the whole, they undermine her credibility. Notably, defendant claims it was incredible that Pieczara was not familiar with the area, and also that the phone records indicate she was on the phone with her sister for four minutes, while she claimed her family members did not answer. This

evidence, however, also permits reasonable inferences that favor the State, including that Pieczara did not know the North Avenue Beach area intimately because she grew up in the suburbs. Furthermore, the reported length of the call in relation to Pieczara's testimony and the other documentary evidence could reflect differences in how her phone and defendant's Uber application measured and recorded time. Based on the above, it was not unreasonable for the factfinder to credit Pieczara's testimony, and accordingly, defendant's claim that the evidence was insufficient because Pieczara testified incredibly fails.

¶ 39    Defendant next claims that the evidence did not establish the elements for kidnapping as charged, as he did not secretly confine Pieczara, and any confinement was not against her will.

First, defendant argues that Pieczara was not secretly confined because she was in a public place with many people around and had access to her cell phone. Other courts, however, have found that confinement in a vehicle in public can constitute "secret confinement" for purposes of a kidnapping charge. *Gonzalez*, 239 Ill. 2d at 481-82; see also *People v. Calderon*, 393 Ill. App. 3d 1, 9 (2009) (" 'courts have held that one can be secretly confined in an automobile within the meaning of the statute whether the automobile is moving or parked.' ") (quoting *People v. Kittle*, 140 Ill. App. 3d 951, 955 (1986)). The secrecy of the confinement itself may establish the element, and under these facts, it is reasonable to interpret defendant's confinement of Pieczara as secret, given that no one else knew that defendant was locking her in the vehicle and transporting her against her will. See *Siguenza-Brito*, 235 Ill. 2d at 227 (element of secret confinement can be established by secrecy of confinement itself).

¶ 40    Defendant also argues that the incident was too brief to constitute confinement, but there is no minimum time for confinement in a kidnapping context. See *id.* at 226; *People v. Jackson*,

331 Ill. App. 3d 279, 294 (2002) (kidnapping conviction "is not precluded by the brevity of the asportation or the limited distance of the movement")). Further, defendant posits that Pieczara voluntarily entered the vehicle, and the only evidence that she was confined against her will was her testimony that he repeatedly locked the doors as she tried to exit. This argument fails for the same reasons explained above. The court could rationally credit Pieczara's account, and accepting her testimony, there is sufficient evidence in the record that defendant confined Pieczara against her will by locking the doors. See *Gonzalez*, 239 Ill. 2d at 481-82.

¶ 41    For the foregoing reasons, defendant's conviction is affirmed.

¶ 42    Affirmed.