2024 IL App (1st) 240794-U

No. 1-24-0794B

Order filed August 30, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | No. 22 CR 0777001 |
| v. | ) ) | Honorable |
| CHARLES LARD, | ) ) | John Wilson, Judge Presiding. |
| Defendant-Appellant. | | |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Mitchell and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 2    Defendant Charles Lard appeals from an order of the circuit court denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022) (Code)), as amended by Public Act 101-652 § 10-255 (eff. Jan. 1, 2023), commonly known as the Safety, Accountability, Fairness and Equity-Today Act (Act). Mr. Lard contends that

the trial court erred in allowing the State to file its petition for detention because it was untimely. Alternatively, he argues that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that he committed the offense charged; that Mr. Lard posed a real and present danger to the community; and that the threat posed by Mr. Lard could not be adequately mitigated if he were released and placed on electronic monitoring. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    I. BACKGROUND

¶ 4      Mr. Lard was charged with eight counts of first degree murder for the May 30, 2022, shooting of Lionel Armstrong. On June 17, 2022, his first bond hearing was held, and the circuit court ordered Mr. Lard to be held without bond in a "no bail" status. On February 14, 2024, a status hearing was held, and defense counsel advised the court that she was filing a petition for Mr. Lard's pretrial release that day. By agreement of the parties, the court continued the case for hearing on the petition to March 27, 2024.

¶ 5      On March 27, 2024, the State notified the court that it had not yet filed a petition to detain, believing it had already filed the petition on February 14th. The State offered to draft the petition immediately for filing. Mr. Lard objected to the State's filing on the grounds that it was untimely. He argued that because he availed himself of the Act on February 14th, the State had 21 days from that date to file its petition. The State responded that March 27th was Mr. Lard's first court appearance under the Act and that a petition could be filed within 21 days of that date. The court continued the matter to the following day for a ruling on whether a hearing would be held for conditions of release or for detention.

¶ 6      On March 28, 2024, Mr. Lard renewed his objection to the timeliness of the State's petition. He stated that he gave notice to the State that he intended to request release under the Act on

- 2 -

February 14, 2024. Defense argued that under section 110-6.1, the State must file its petition on Mr. Lard's first appearance upon availing himself of the Act, or within 21 days of that date, therefore it was untimely. The court ruled that the petition was timely under section 7.5(b)(1) of the PFA, stating that under that section, the State had 90 days from the date a defendant avails themselves of the Act to file a petition to detain. The court then conducted the detention hearing.

¶ 7    The State proffered that on the day of the shooting, a witness was hosting a barbecue at his home. Both Mr. Lard and Mr. Armstrong were in attendance. Mr. Lard initially arrived at the barbecue around 1 p.m., left and returned several times. He arrived for the final time around 7 p.m. According to the witness, Mr. Lard appeared upset and began arguing with Mr. Armstrong. The witness unsuccessfully attempted to separate the parties when Mr. Lard broke away, walked toward Mr. Armstrong who was sitting in a car, shot him multiple times, and then fled. Mr. Armstrong was subsequently transported to the hospital where he was pronounced dead. The witness told arriving officers that Mr. Lard contacted him several times after he left via text message and phone calls, asking if he was going to snitch.

¶ 8    Officers recovered five .9 millimeter spent shell casings from the vicinity of the car. On June 15, 2022, officers placed Mr. Lard into custody, searched his person and recovered a .9 millimeter handgun. That firearm was tested and found to have been the handgun that fired all five spent shell casings. The State then published Mr. Lard's criminal background, which included convictions for driving with a suspended license, an aggravated unlawful use of a weapon, residential burglary, and drug possession.

¶ 9    Defense counsel responded that the State failed to meet its burden of proving that Mr. Lard committed the charged offense by clear and convincing evidence. She argued that the majority of the evidence presented against him was based on one unreliable witness. Counsel argued that a

search warrant was executed for the witness' home, resulting in the recovery of numerous firearms. Counsel further alleged that following the execution of the search warrant, the witness was taken into custody, and while being interrogated, made the statement implicating Mr. Lard in the murder of Mr. Armstrong. According to counsel, the witness was on electronic monitoring for a gun case when he made those statements. Counsel also stated that there was an additional firearm found in Mr. Armstrong's car after the shooting.

¶ 10    In mitigation, regarding Mr. Lard's criminal background, defense counsel argued that all but one of his prior convictions were nonviolent. Counsel stated that Mr. Lard was 41 years old, had three children and prior to his arrest, worked for a company that prepared breakfast for the children in the Maywood school district. While in custody, he completed multiple programs; was in the GED program at the time of the hearing; received certificates for participating in the University of Illinois, Chicago Law School; and for excellence as a volunteer teaching assistant, supporting fellow students during and outside class time. Counsel also presented a letter from the Sheriff's Department stating that Mr. Lard had been housed in the Boys2Men program for nearly 300 days.

¶ 11    Following Mr. Lard's argument, the court then asked whether any of the shell casings matched the firearm recovered from Mr. Armstrong's car. The State informed the court that both firearms were tested and that only the firearm recovered from Mr. Lard matched the shell casings. The court then issued its ruling, stating that it found that the State had met its burden and had shown by clear and convincing evidence that Mr. Lard had committed the offense of first degree murder. The court stated that based on State's proffer, "the recklessness of the act, endangering others around," it found the Mr. Lard posed a real and present threat to the safety of any person, persons, or the community. The court considered Mr. Lard's background, acknowledging defense

counsel's characterization of his offenses as non-violent. Nevertheless, the court found that Mr. Lard presented a threat and ordered him to be detained.

¶ 12                                    II. ANALYSIS

¶ 13    Mr. Lard filed a timely notice of appeal from the circuit court's order. We find that we have jurisdiction to consider the merits of this appeal. See 725 ILCS 5/110-6.1(j) (West 2022); Ill. S. Ct. R. 604(h)(1)(iii) (eff. Sept. 18, 2023). In Mr. Lard's memorandum, he contends that the State untimely filed its petition to detain him. In the alternative, he argues that the State failed to meet its burden of proving by clear and convincing evidence all three elements under subsection (e) of section 110-6.1.

¶ 14                    A. Timeliness of Detention Petition

¶ 15    Mr. Lard argues that the circuit court misinterpreted the Act's timing provision and erroneously granted the State's petition for detention. He contends that the court improperly applied section 110-7.5(b) (725 ILCS 5/110-7.5(b) (West 2022)) in finding the State's petition timely. Rather, he insists the correct section to apply is 110-6.1(c) (725 ILCS 110-6.1(c)(1) (West 2022)), which would have deemed the petition invalid.

¶ 16    Section 110-6.1(c) provides: "[a] petition may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days, except as provided in section 110-6.1, after arrest and release of the defendant***." 725 ILCS 5/110-6.1(c). Section 110-7.5(b), that the circuit court relied upon, states that persons charged with an offense under paragraph 1.5 of subsection (a) of section 110-6.1, and held without bail before the Act was effective, are entitled to a hearing within 90 days of their motion for reconsideration of pretrial release conditions. This is an issue of statutory interpretation that we review de novo. *People v. Taylor*, 2023 IL 128316, ¶ 45. When interpreting a statute, our objective "is to ascertain and give effect to the legislature's

intent." *People v. Newton*, 2018 IL 122958, ¶ 14. We must first look to "the language of the statute, given its plain and ordinary meaning." *Id.* However, "[t]he statute should be evaluated as a whole, with each provision construed in connection with every other section." *Jackson v. Board of Election Commissioners of City of Chicago*, 2012 IL 111928, ¶ 48.

¶ 17    Mr. Lard contends that the timing of the petition is governed by subsection (c) of section 110-6.1, not section 110-7.5. Section 725 ILCS 5/110-6.1(c) states that a petition may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days after arrest and release of the defendant. Mr. Lard argues that his motion for pretrial release triggers the timing provision of section 110-6.1. Therefore, he asserts, the State's petition was untimely because it was filed more than 21 days after he availed himself of the Act.

¶ 18    The State argues that the applicable timing provision is located in section 110-7.5 because Mr. Lard was held in pretrial detention on a "no bail" order before the Act was effective. Section 110-7.5(b) creates a process to obtain a hearing for persons who remain in pretrial detention and are eligible for detention under section 110-6.1. *Id.* According to the provision, Mr. Lard, who has been charged with an offense under paragraph 1.5 of subsection (a) of section 110-6.1, is entitled to a hearing within 90 days of his motion for reconsideration of pretrial release condition. 725 ILCS 5/110-7.5(b). The only type of hearing described in this section is the hearing prescribed in subsection (e) of section 110-5. At such hearing, the court is directed to "determine the reason for continued detention." 725 ILCS 5/110-5(e) (West 2022). However, section 110-7.5 does not limit the State's Attorney's ability to file a verified petition for detention under section 110-6.1. 725 ILCS 110-7.5(a). Based on that provision, the State asserts that section 110-7.5 allows for petitions to be filed within the 90 days of a motion for pretrial release.

¶ 19    Though there have been conflicting interpretations of the application of section 110-6.1 to persons incarcerated before the effective date of the Act, we have not looked to section 110-7.5 to resolve the issue of timeliness. See, e.g., *People v. Whitmore*, 2023 IL App (1st) 231807 (holding that a petition is timely at the first appearance before a judge after the effective date of the Act); *People v. Brown*, 2023 IL App (1st) 231890 (finding the State's petition untimely because it was not filed at the defendant's first appearance, nor was it filed within 21 days of the defendant's arrest and release); *People v. Haisley*, 2024 IL App (1st) 232163 (holding court held that the State is not time-barred under section 110-6.1(c) when a defendant has not been released from custody). Accordingly, we will apply section 110-6.1 to the case at bar.

¶ 20    Mr. Lard filed a petition for pretrial release on February 14, 2024, availing himself of the Act. In response, the State filed its petition for detention on March 27, 2024. As Mr. Lard had not been released from custody, the timing requirement of section 110-6.1(c) had not yet been initiated. See *People v. Freeman*, 2024 IL App (1st) 232476-U, ¶ 25 (the circuit did not err in finding State's petition timely where the defendant had not been released from custody, therefore the State's time to file its petition had not yet started to run). We, therefore, find the State's petition timely. Though the circuit court found that the State's petition was timely under section 110-7.5 instead of section 110-6.1, we exercise our ability to affirm on any grounds in the record regardless of whether the circuit court's reasoning was correct. See *In re Marriage of Lehr*, 317 Ill. App. 3d 853, 862 (2000).

¶ 21                    B. State's Burdens Under Section 110-6.1

¶ 22    Alternatively, Mr. Lard argues the State failed to meet all three of its burdens as required by the Act. We first note, the Act established a presumption that all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e). The State has the burden of rebutting that presumption by proving at a hearing that a defendant should be denied pretrial release. *Id.* The Act provides a

list of offenses for which the State may seek detention. *Id* § 110-6.1(a)(1)-(7). To meet its burden, the State must prove by clear and convincing evidence that: (1) the proof is evident or the presumption great that the defendant has committed an offense that qualifies for pretrial detention; (2) the defendant poses a real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case; and (3) no condition or combination of conditions of pretrial release can mitigate the real and present threat to the safety of any person or persons in the community, based on the specific and articulable facts of the case. *Id.* at § 110-6.1(e)(1)-(3). Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." *In re Tiffany W.,* 2012 IL App (1st) 102492-B, ¶ 12.

¶ 23 Mr. Lard contends that the State failed to prove by clear and convincing evidence that he committed the detainable offense of first degree murder and that he posed a real and present threat to a person, persons, or the community. Specifically, he argues that the State's witness was unreliable and that the court, therefore, should not have considered his statement in determining whether Mr. Lard committed the offense, and of his dangerousness. We will not reverse a finding of clear and convincing evidence unless the circuit court's finding was against the manifest weight of the evidence. *In re C.N.*, 196 Ill. 2d 181, 208 (2001). "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *People v. Deleon*, 227 Ill. 2d 322, 332 (2008).

¶ 24 First degree murder is one of the offenses listed by the Act that are eligible for detention. See 725 ILCS 5/110-6.1(a)(1.5). Under the statute as charged by the State in this case, a person is guilty of first degree murder when he causes the death of another and either intended to kill or

commit great bodily harm to the decedent or knows that such actions would cause death to the decedent or another person. 720 ILCS 5/9-1-A-1.

¶ 25    Mr. Lard argues that the State's proffer "primarily relied on the statement of a single unnamed witness, despite there being multiple people present at the time of the alleged offense." He also argues that the court erred in its finding of dangerous because it based its determination on a witness, whom he asserts, was unreliable. He contends that the court failed to address the evidence presented by defense counsel in making its assessment. We disagree with Mr. Lard's assessment of the evidence.

¶ 26    Here, the State proffered not only that a witness watched Mr. Lard shoot Mr. Armstrong while he was sitting in the car, but that the shell casings recovered from the crime scene were fired from the firearm recovered from Mr. Lard's person. The State also proffered that the Mr. Lard sent threatening text messages, as well as phone calls, to the witness regarding the shooting. At this stage, the State's burden is not proof beyond a reasonable doubt, but whether there is clear and convincing evidence that the proof was evident or the presumption great. 725 ILCS 110-6.1(e)(1). As such, we do not find the circuit court's finding to be unreasonable, arbitrary, or not based on the evidence presented. Nor do we find that the opposite conclusion is clearly evident.

¶ 27    Regarding the issue of dangerousness, the Act instructs courts to consider a number of factors to determine dangerousness including, but not limited to, the nature and circumstances of the offense charged, including whether the offense is crime of violence involving a weapon and the history and characteristics of the defendant. 725 ILCS 5/110-6.1(g)(1)-(2).

¶ 28    Here, the court stated that it considered the "recklessness of the act" and believed Mr. Lard endangered others around by firing a weapon. The court also considered his good behavior while in custody but concluded that no conditions would mitigate the threat of his release. In its written

report, the court summarized its in-court statements, writing that Mr. Lard, "after multiple interactions returned to the scene and fired multiple shots into a person sitting in a car." We believe the court properly assessed the statutory factors and that its findings were reasonable.

¶ 29    Finally, Mr. Lard challenges the circuit court's ruling that no condition or combination of conditions would mitigate the threat he poses to the community. He contends that the State did not provide any argument in support of a finding for the issue of conditions and did not make specific findings. He contends he is a suitable candidate for release with the condition of electronic monitoring.

¶ 30    We apply the abuse of discretion standard when assessing the circuit court's finding as to the issue of conditions. *People v. Reed*, 2023 IL App (1st) 231834, ¶ 24. An abuse of discretion occurs when the court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position adopted by the court. *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 31    Section 110-5 of the Code outlines factors for the circuit court to consider in determining the conditions of release. These factors include the nature and circumstances of the offense charged, the weight of the evidence against the defendant, and the defendant's criminal history. 725 ILCS 5/110-5(a)(1)-(3) (West 2022). In its oral ruling, the court noted the "improvements and actions" of Mr. Lard while in custody but did not believe there were less restrictive conditions that were available to protect any person, persons, or the community. The court also discussed Mr. Lard's background, including his convictions of residential burglary and unlawful use of a weapon by a felon. In its written order, the court included the proffered fact that Mr. Lard had made "implied threats to the witness" as well as the nature of the offense. Based on the record, the court applied the specific articulable facts of the case to the factors outlined by the Act and determined

there were no conditions that would mitigate the threat Mr. Lard poses. We therefore find no abuse of discretion. Accordingly, we affirm the judgment of the circuit court.

¶ 32                                    III. CONCLUSION

¶ 33     For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 34     Affirmed.